## Highlands vs. Commonwealth.

*(Supreme Court of Pennsylvania, January, 1886.)*

WHEN JEOPARDY ATTACHES. DISCHARGE OF JURY BEFORE VERDICT.

After the jury in a criminal case are duly impaneled and sworn, the prisoner is in jeopardy. After the jury had been impaneled and sworn the court, with the consent of the commonwealth and also the prisoner, permitted them to separate; upon the following day the court, without the consent of the prisoner, and because it believed the permitting of the jury to separate was irregular, discharged the jury, and ordered the calling of another. The prisoner objected to the selection of a second jury, and pleaded former jeopardy, which plea was not sustained, and the trial was proceeded with; the prisoner was convicted of murder in the first degree. Held, that the court erred in not sustaining the plea of former jeopardy.

Error to the Oyer and Terminer of Mercer county. The opinion states the point.

For plaintiff in error, J. G. White and Stranahan & Bowser.

For defendant in error, G. E. Patterson, district attorney, with whom were Stewart & Cochran.

Mercer, C. J.—The main contention in this case arises under the first specification of error. After a jury had been selected and sworn in the case, and had been discharged without the consent of the defendant, he objected to the selection of another jury, and pleaded former jeopardy. The court refused to sustain the plea.

Article V. of the amendment to the Constitution of the United States, *inter alia*, declares: "Nor shall any person be subject for the same offense, to be twice put in jeopardy of life or limb." Article I., section 10 of the declaration of rights in the constitution of Pennsylvania declares: "No person shall, for the same offense, be twice put in jeopardy of life or limb." This declaration of individual protection is not new to the people of this commonwealth. The identical language was in the constitution of 1790. It was retained in the amended one of 1838, and is repeated in the present constitution. It will be observed that the constitutional prohibition does not declare that a person shall not be twice tried for the same offense which involves his life or limb, but that he shall not be twice put in jeopardy.

At what step in the prosecution is a person put in jeopardy, to which he shall not be subjected the second time for the same offense? Undoubtedly when the trial begins in which he is charged with a capital offense. That begins when the jury is charged with the prisoner. It is so charged as soon as the twelve jurors are duly impaneled and sworn. They are sworn well and truly to try and true deliverance make between the commonwealth and the prisoner whom they have in charge. The

trial has then begun. The prisoner stands before them as his judges with his life in their hands. Commonwealth *vs.* Cook, 6 S. & R. (Pa.) 578; Same *vs.* Clue, 3 Rawle (Pa.) 498; Peiffer *vs.* Commonwealth, 15 Pa. St, 468; McFadden *vs.* Same, 23 Id. 12; Alexander *vs.* Same, 105 Id. 1.

The jury are not only the judges of the facts in such a case, but also of the law. If they find the prisoner not guilty, although in clear mistake of the law, no court can review the correctness of that verdict, and again put him in jeopardy for the same offense. Whether the verdict be on the commonwealth declining to give any evidence, or whether it be after a protracted trial and the testimony of many witnesses, the judgment thereon is equally conclusive. In the present case the court of its own will and action, discharged the jury after it had been duly sworn, impaneled and charged with the prisoner. His consent thereto was neither given nor asked for. This action of the judge was induced by the fact that after the jury had been so duly charged he had, on the previous evening, permitted it to separate by consent of the prisoner and of the commonwealth.

The question now is, did that separation authorize the court to discharge that jury, and put the prisoner on trial before another jury on the same indictment?

When the second jury was about to be called, and the prisoner informed of his right of challenge, his counsel filed a plea of former jeopardy. The court overruled the plea, holding that inasmuch as the discharge of the jury was by reason of its separation with the consent of the prisoner and the commonwealth, he could not, on that account, plead former jeopardy, and therefore refused to sustain the plea.

No complaint is now made that the jury was permitted to separate; but the claim is that the separation did not impair the conclusive effect of their discharge. In other words, that the discharge from the first jeopardy was not under such an extreme and overwhelming necessity as to justify an entire disregard of the constitutional protection guaranteed to every person.

The decisions of the different states are not in entire harmony as to the power of the court to discharge a jury after it is sworn in a criminal case. In some of them no clearly defined distinction appears to have been made between capital offenses and those of lesser grade. It is not necessary to cite them. In our own state we have a line of cases applicable to the discharge of a jury in capital offenses, which control this case.

We will refer to some, and to the opinions of the able judges in deciding them. Commonwealth *vs.* Cook, *supra*, was a capital case, in which the court, without the consent of the prisoner, had discharged

the jury by reason of their inability to agree on a verdict. The opinion is by Mr. Chief Justice Tilghman. He reviews the English decisions prior to the revolution, and the American cases since, which relate to the power of the court to discharge a jury after they are all sworn in a capital case, and then says: "I grant that in case of necessity they may be discharged; but if there be anything short of absolute necessity how can the court, without violating the Constitution, take from the prisoner his right to have the jury kept together until they have agreed, so that he may not be put in jeopardy a second time?"

He further adds: "I think myself safe in asserting that there is no evidence of any instance since Willian Penn obtained his charter from Charles II, in which a jury was discharged without the consent of the prisoner in a capital case." He closes his opinion by saying: "For my own part, thinking that their blood would be upon us if they were convicted of murder in the first degree on a second trial in this court, I am of opinion that they should be discharged from this indictment."

Mr. Justice Duncan also filed an opinion entirely concurring with the Chief Justice, and adds: "There is at this day a settled and uncontroverted rule, that in case of life or member, a jury sworn and charged cannot be discharged before they give a verdict, unless with the consent of the prisoner and where it is for his benefit, or in cases of extreme necessity, and if a jury is otherwise discharged it clearly amounts to an acquittal of the prisoner."

The correctness of the law as declared in Commonwealth *vs.* Cook was affirmed in Commonwealth *vs.* Clue, *supra*, in an opinion by Mr. Chief Justice Gibson. In discussing the justice and reason of the rule, he says: "Why it should be thought that the citizen has no other assurance than the arbitrary discretion of the magistrate, for the enforcement of the constitutional principle which protects him from being twice put in jeopardy of life or member for the same offense, I am at a loss to imagine. If discretion is to be called in, there can be no remedy for that most palpable abuse of it, but an interposition of the power to pardon, which is obnoxious to the very same objection. Surely every right secured by the Constitution is guarded by sanctions more imperative." In that case the first jury had been discharged, without the consent of the prisoner, by reason of the sickness of two of the jurors. This court, thinking the illness was produced by reason of the jurors being kept without food or refreshment, and believing if the same had been furnished the health of the jurors would have been sufficiently restored, held there was no sufficient cause for their discharge, and that it was a bar to a second trial for the same offense.

McFadden *vs.* Commonwealth, *supra*, was also a capital case. In the

opinion of the court by Mr. Chief Justice Black, he says: "A discharge of the jury in a capital case, after the trial has begun, is not a continuance of the cause. It is the end of it. And for all purposes of future protection it is the same to the prisoner as an acquittal, unless it was done with his own consent, or demanded by some overwhelming necessity, such, for instance, as the sickness or death of a juror."

In Peiffer *vs.* Commonwealth, *supra*, Mr. Chief Justice Gibson declared that "even the forms and usages of the law conduce to justice."

The people of this commonwealth, in all of its organic laws, and with great tenacity, have applied this rule to trials by jury. Thus the Constitution of 1776, framed by the convention over which Benjamin Franklin presided, declared "trials shall be by jury as heretofore."

As if to emphasize the thought, and make the right more secure, the Constitution of 1790 changed the language and declared, "That trial by jury shall be as heretofore, and the right thereof remain inviolate.' These precise words were retained in the constitution of 1838, and are repeated in the constitution of 1874.

The question is, was it error to overrule the prisoner's plea of former jeopardy, when he was called before the second jury? It may be conceded that a person on trial for a capital offense ought not to be asked to consent to a separation of the jury. Peiffer *vs.* Commonwealth, *supra.*

To this conclusion the court came on the next day, after permitting them to separate. The prisoner had not withdrawn his consent to that separation. He had not, and did not, interpose an objection to the continuance of his trial before that jury. If it had gone on before them, and he had been convicted of murder in the first degree, *non constat,* that he would have assigned that separation to avoid the effect of the verdict. The commonwealth could not.

Under the indictment it was within the power of the jury to acquit the prisoner of murder, and to find him guilty of voluntary manslaughter only. If such were the verdict, and the prisoner assigned for error to the judgment, the separation of the jury, we would apply the same rule that should be applied in case he had been indicted and tried for manslaughter only. Moss *vs.* Commonwealth, 15 Pitts. L. J. 107. It is neither proven nor alleged that the jurors were subjected to any improper influence during their separation. If the conviction had been for the lesser grade, the separation of itself alone would not have been a fatal error.

We are not able to understand how the consent of the prisoner to the separation of the jury from evening until morning justified their subsequent discharge. If his consent gave any validity to the separation, it remained in full force. He had not in any manner attempted

to supersede or impair its effect. If his consent was of no validity, then the error in permitting them to separate was that of the court, and the prisoner was not responsible therefor.

The discharge of the jury was not caused by any improper conduct of the prisoner during the trial. He did not consent to it. It was the action of the court alone, and to retrieve what the court thought was its previous error. If the right to discharge the jury for an error made by the court existed at that stage of the trial, we cannot see why the same right might not again be invoked, if a similar error had been committed near the close of the trial. If the right to so discharge be conceded to exist, then a person may, for the same offense, be put in jeopardy of life for an indefinite number of times.

The great safeguard which the organic law has thrown around the prisoner cannot thus be set at naught, to correct any error committed by the judge during the trial of the cause. Under all the facts in this case, we cannot concede any discretionary power in the court to thus strike down the constitutional right of every person on trial for a capital offense. It is better that one guilty man escape than to disregard the mandate of the Constitution and establish a precedent which might result in many unjust convictions in the future.

The language of the constitution is imperative. The ablest judicial minds which have administered the law in this commonwealth have emphasized its protecting power. Yielding, then, to the clear covenant of the former, and adopting the construction put upon it by our predecessors on this bench, we do not find that the first jury was discharged under such extreme and overwhelming necessity as to subject the prisoner to be again put in jeopardy of his life for the same offense. It was clear error not to sustain the plea of former jeopardy, and also in putting the prisoner on trial before another jury for the same offense. He should have been discharged from the indictment.

The conclusion at which we have arrived makes it unnecessary to consider the other specifications of error.

Judgment reversed, and it is further ordered that the record be remanded with this opinion setting forth causes of reversal to the Court of Oyer and Terminer of the county of Mercer for further proceedings.

Gordon, J., dissents. *Criminal Law Magazine.*

NOTE.—In the case of Pizano *vs.* The State, recently decided in the Court of Appeals of Texas. Galveston term, 1886, it was held that after a jury has been impaneled in a criminal case, and the prisoner has pleaded to the indictment, a discharge of the jury, against the defendants objection, constitutes a valid defense of "former jeopardy" to another trial for the same offense.